AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| United States of America | ) | |
| v. | ) | Case No. *11-6529-Seltzer* |
| | ) | |
| TERRANCE BROWN, | ) | |
| TORIANO JOHNSON, and | ) | |
| DARYL DAVIS | ) | |
| *Defendant(s)* | | |

*FILED BY*
*STEVEN M...*
*CLERK U.S...*
*S.D. OF FLA...*
*2011 OCT 13 PM 1:58*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 1, 2010_____ in the county of _____Broward_____ in the
_____Southern_____ District of _____Florida_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951, 2 | On or about October 1, 2010, the defendants did knowingly and intentionally conspire to interfere with interstate commerce by robbery; and did knowingly interfere with interstate commerce by robbery, in violation of Title 18, United States Code, Sections 1951 and 2. |
| 18 U.S.C. § 924(c), 924(j), 2 | On or about October 1, 2010, the defendants did knowingly use and carry a firearm during and in relation to a crime of violence, that is, Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951; did possess a firearm in furtherance of such crime; and did cause the death of a person through use of a firearm; all in violation of Title 18, United States Code, Sections 924 (c)(1)(A), 924(c)(1)(C), 924(j), and 2. |

This criminal complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT**

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Gerard J. Starkey, Task Force Officer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __10/13/11__

_____
*Judge's signature*

City and state: _____Fort Lauderdale, Florida_____        Hon. Barry S. Seltzer, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Your Affiant, Gerard J. Starkey, being duly sworn, deposes and states:

1.      I am a Task Force Officer ("TFO") of the Federal Bureau of Investigation ("FBI") and I am currently assigned to the South Florida Violent Crime/Fugitive Task Force that handles, among other things, investigations involving bank robberies and armored car robberies.  I have nearly thirty years of investigative experience, the majority spent as a robbery detective with the Miami-Dade Police Department ("MDPD").

2.      This affidavit is submitted in support of a criminal complaint for the arrest of TERRANCE BROWN, TORIANO "SLICK" JOHNSON, and DARYL DAVIS, who did knowingly and intentionally conspire to interfere with interstate commerce by robbery, and did knowingly interfere with interstate commerce by robbery, in violation of Title 18, United States Code, Sections 1951 and 2; and did knowingly use and carry a firearm during the commission of a crime of violence, that is, Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951, did possess a firearm in furtherance of such crime, and did cause the death of a person through use of a firearm, all in violation of Title 18, United States Code, Section 924(c)(1)(A), 924(c)(1)(C), 924(j), and 2.

3.      The information contained in this affidavit is based in part on information developed by other law enforcement personnel and civilian witnesses.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause for the arrest of BROWN, JOHNSON, and DAVIS, it does not contain all of the information known to me or others regarding this investigation.

4.      On October 1, 2010, at approximately 11:55 a.m., a Brinks armored car messenger was delivering approximately $397,500.00 in United States currency to Bank of America, located at 7950 Miramar Parkway, Miramar, Florida, located in Broward County, in the Southern District of Florida. As the Brinks messenger attempted to enter the branch, two black males carrying firearms approached him. One of the two males, later identified as Nathaniel Moss, wearing a bright orange traffic safety vest, held a firearm to the messenger's head. Moss then shot the messenger in the head, fatally wounding him. The second male, later identified by the street name "Soldier," grabbed a bag of money belonging to Brinks.

5.      Moss and Soldier fled the scene. Surveillance video shows Soldier entering the front passenger side of a white Toyota Camry after placing the money bag inside. The vehicle traveled south through a strip mall parking lot near the bank, coming to a stop after colliding with a trash dumpster. Upon police arrival, the vehicle had been abandoned.

6.      Moss was apprehended hiding in bushes a short distance from where the car had come to a stop. Near Moss, officers recovered a bright orange traffic safety vest. Moss was wearing a ballistic vest, and had in his possession a pair of pliers and a pair of latex gloves.

7.      An eyewitness saw two black males enter a vehicle near the area where Moss was subsequently found hiding. The eyewitness told law enforcement the first three digits of the license plate of that car. That car, which is a silver Honda Civic, was located a little more than a mile from the scene of the robbery. The car had been abandoned with the engine still running.

2

8.      Agents recovered one Brinks courier bag containing a total of $395,000.00 in U.S. currency from inside the white Toyota Camry.  The remaining $2,500 in U.S. currency was recovered outside the bank at the scene of the shooting.

9.      On October 2, 2010, an autopsy was conducted by the Broward County Medical Examiner of the messenger shot at the scene.   The examiner determined that the cause and manner of death was homicide by gunshot wound to the head.

10.     Brinks is a company that operates inside and outside the State of Florida. Bank of America is a bank, the deposits of which are federally insured, and which has locations both inside and outside the State of Florida.  Bank of America and nearby stores were shut down for a period of time as a result of the robbery.

11.     On October 19, 2010, a federal grand jury sitting in the Southern District of Florida indicted Moss for conspiracy to commit a robbery affecting interstate commerce, robbery affecting interstate commerce, and the use of a firearm during the robbery resulting in the death of another person.

12.     Moss has admitted to his involvement in the planning and execution of the October 1, 2010, robbery.  He has specifically admitted to shooting the Brinks messenger.

13.     Law enforcement officers have interviewed Moss.  Moss has provided highly detailed accounts of the robbery crew's activities, as well as of other criminal activity in which he and others have engaged.  Moss's statements have, to date, proven to be truthful and accurate.  In particular, and to the extent possible, Moss's statements have been corroborated by information not in the public domain.

14.    In addition to admitting his role in the robbery and murder, Moss has identified the other participants in the robbery, including (but not limited to) the following:  BROWN, JOHNSON, and DAVIS.  Moss also identified an individual he knows only by the street name Soldier as a member of the crew.

15.    When interviewed, Moss stated that he, BROWN, JOHNSON, DAVIS, Soldier, and others attempted to commit an armored car robbery at the same Bank of America in Miramar, Florida, on September 17, 2010 (exactly two weeks prior to the October 1, 2010, robbery and murder). Moss stated that BROWN planned both the September 17, 2010, attempted robbery and the October 1, 2010, robbery, and that JOHNSON served as second-in-command of the robbery crew.  Moss stated that the crew used DAVIS's residence, which is near the Miramar Bank of America, as their gathering place in advance of both robberies.  Moss stated that during each of the two robberies, he and Soldier were assigned to be gunmen, while BROWN, JOHNSON, and DAVIS served as lookouts to alert the other crew members to the arrival of the Brinks truck and to watch for law enforcement presence.  Moss stated that he had been given the orange vest he wore during the robbery by DAVIS, who is a municipal worker for Miami-Dade County.  Agents have confirmed that DAVIS is in fact employed by Miami-Dade County and that, in the course of his employment, he has access to the type of vest Moss wore. Agents have also confirmed that the vest was manufactured or distributed by a vendor that has sold those vests to DAVIS's employer.

16.    As to the September 17, 2010, attempted robbery, Moss stated that BROWN drove a black Dodge Charger registered to JOHNSON, that DAVIS drove his white Miami-Dade County work van, and that another individual known to the

4

government drove a stolen burgundy Infiniti sports utility vehicle. According to Moss, JOHNSON drove his own Nissan Maxima. Subsequent review of surveillance video from September 17, 2010, shows four vehicles at the bank at the approximate time that a Brinks armored car was present that day that are consistent with Moss's description—a fact not known to law enforcement prior to speaking with Moss. Moss stated that the robbery attempt was aborted when law enforcement officers responded to the scene to address an unrelated car accident.

17.     Investigation revealed that the White Toyota Camry that was abandoned by the robbery crew on October 1, 2010, had been reported stolen on or about September 17, 2010, from the Coconut Creek, Florida, area. Investigation also revealed that the silver Honda Civic abandoned a little more than a mile from the robbery on October 1, 2010, had also been reported stolen from the Coconut Creek, Florida, area on or about September 28, 2010.

18.     Moss told law enforcement that he and BROWN stole the burgundy Infiniti used in the September 17, 2010, attempted robbery from Del Ray Beach, Florida. Investigation revealed that a burgundy Infiniti consistent with the one depicted in the September 17, 2010, surveillance video was recovered by law enforcement on September 19, 2010, (two days after the attempted robbery) in a housing complex close to BROWN's residence. That Infiniti was reported stolen from Del Ray Beach on July 12, 2010. When found, the Infiniti bore a license plate stolen from another car. That plate had been stolen on September 17, 2010, from a car located in the same residential complex in Coconut Creek, Florida, from which the white Camry used in the October 1, 2010, robbery was stolen. Moss identified and described the housing complex in which

BROWN had placed the stolen Infiniti after the September 17, 2010, attempted robbery. Subsequent law enforcement investigation confirmed that Moss had accurately identified the complex.

19.     Law enforcement has obtained cellular telephone records, including cell site location data, for telephones used by Moss, BROWN, JOHNSON, and DAVIS. The government provided Moss his own cellular telephone records as part of discovery. Moss, however, has not been provided the records pertaining to BROWN, JOHNSON, DAVIS, or any other individual.

20.     Analysis of these cell site records indicates that Moss was in Coconut Creek on September 17 and 28 at the times at which the two getaway cars were stolen.

21.     Multiple sources have identified two cellular telephones BROWN used in September and October of 2010. Cell site records for BROWN's phones indicate that BROWN's phone was in Coconut Creek on both September 17 and September 28, 2010, in the vicinity from which wthe two vehicles used in the October 1, 2010, robbery were stolen. Moss has specifically admitted that he and BROWN stole those two cars from Coconut Creek to use as getaway cars in armored car robberies.

22.     Cell site records show that BROWN's phone was in the close proximity to the bank that is the scene of the October 1 robbery.

23.     A source has identified the cellular telephone DAVIS used during September and October 2010 and continues to use. Toll record analysis indicates that BROWN and DAVIS had two-hundred and fifty-two (252) telephone calls between September 1, 2010, and October 1, 2010. These calls include multiple calls from DAVIS to BROWN immediately after the October 1, 2010, robbery. In addition, agents obtained

an audio recording of DAVIS using his cellular telephone a few hours after the robbery on October 1, 2010. Agents familiar with DAVIS's voice have confirmed that the recording is of DAVIS. Cell site data shows that DAVIS's phone was in the vicinity of the bank at the time of the October 1 robbery.

24.     Investigation has revealed one of the cellular telephones JOHNSON used during the time period before and during the October 1, 2010, robbery. Cell site data shows that, on October 1, 2010, at 12:07 p.m., approximately ten (10) minutes after the robbery, JOHNSON's phone was present at a location approximately a mile from the robbery from which the second getaway car was recovered. Cell site data also shows that JOHNSON's phone was present in the vicinity of the Miramar Bank of America during the September 17, 2010, attempted robbery. Further, cell site data shows that JOHNSON's phone was present in the vicinity of the Bank of America at or around the time the Brinks armored car arrived there on September 10, 2010, and September 24, 2010. In sum, then, the phone which investigation has revealed JOHNSON uses was in the vicinity of that Bank of America at the time the Brinks armored car arrived on four successive Fridays in September and October of 2010, two of which coincided with the September 17 attempted robbery and the October 1 robbery.

25.     Law enforcement has obtained more than a year's worth of cell site data for JOHNSON's cellular telephone. In the more than 16,000 calls reflected in that data, JOHNSON's phone connects with the tower closest to that Bank of America on a total of approximately ten (10) different days, including the four recounted in the preceding paragraph. On none of the other six (6) days is JOHNSON's phone in the area of the Bank of America around noon on a Friday. Most are in the evening or the very early

hours of the morning.  Only one other call is during the day time—a call on a Wednesday

in February, 2010.  JOHNSON neither lives near works in the vicinity of the Miramar

Bank of America.

26.    In 2004, BROWN was indicted in the District of South Carolina for his

involvement in an armored car robbery there with a similar *modus operandi* to that used

in the October 1, 2010, robbery; namely, the use of one stolen vehicle to commit the

crime and a second stolen vehicle to make a subsequent getaway.  BROWN entered a

guilty plea during which he admitted to conspiring with others to steal two motor vehicles

for use by his co-conspirators in the commission of an armed car robbery.  BROWN

admitted that after the robbery, he and his co-conspirators used the Toyota Camry to

drive away from the scene of the crime and later switched the sports utility vehicle to

make their escape.  BROWN further admitted that he and his co-conspirators left the

jurisdiction of the robbery with the stolen proceeds.  That case resulted in BROWN's

conviction for conspiracy to transport stolen moneys in excess of $5,000 in interstate

commerce, a violation of Title 18, United States Code, Section 371.


FURTHER YOUR AFFIANT SAYETH NAUGHT.

Gerard J. Starkey, Task Force Officer
Federal Bureau of Investigation


Sworn and subscribed to before
me this \_\_ day of October, 2011.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**No.** _____

**UNITED STATES OF AMERICA**

**vs.**

**TERRANCE BROWN,**
**TORIANO JOHNSON, and**
**DARYL DAVIS**
                     **Defendants.**
_____/

## CRIMINAL COVER SHEET

1.     Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes  __X__ No

2.     Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes  __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
Jason Linder
Assistant United States Attorney
District Court No. A5501149
United States Attorney's Office
500 E. Broward Boulevard
Fort Lauderdale, Florida 33394
Telephone Number (954) 660-5789
Fax Number (954) 356-7336
jason.linder@usdoj.gov