# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 11-60285-ROSENBAUM/SNOW

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TERRANCE BROWN, *et al.*,

        Defendants.

_____/

## ORDER

This matter is before the Court on Defendant Terrance Brown's Motion for Issuance of Rule 17 Subpoena to Counsel for Nathanial Moss [D.E. 529]. The Court has carefully reviewed Defendant's Motion and all supporting and opposing filings and is otherwise duly advised in the premises. For the reasons set forth below, the Court now denies Defendant Brown's Motion.

### *I.  Background*

On October 1, 2010, a Brink's armored truck messenger was shot dead outside of a Bank of America branch located in Miramar when individuals attempted to rob him of approximately $395,000.00 that he was delivering. In connection with this event, Nathanial Moss was charged with conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and using and carrying a firearm during the commission of a Hobbs Act robbery and causing the murder of a person in the course of that violation. *See United States v. Nathaniel Moss*, Case No. 10-60264-CR-COHN (S.D. Fla. Jan. 13, 2012), D.E. 9 (Indictment). Based on these charges, Moss was eligible for the death penalty. *See id.* at 3-4.

In exchange for the Government's agreement not to seek the death penalty, however, Moss pled guilty to the Indictment. *See* Case No. 10-60264, D.E. 145 at ¶¶ 1, 11. Ultimately, Moss was sentenced to life imprisonment. *See id.* at D.E. 150. As a part of his plea agreement and in effort to obtain a reduced sentence, Moss agreed to cooperate with the Government in its investigation of the October 1, 2010, robbery. *See id.* at D.E. 145, ¶¶ 8-10. Through Moss, the Government learned of other allegedly successful and unsuccessful armored car robbery attempts in which Moss, Defendant Brown, and other Defendants allegedly participated over a number of years. To varying degrees, the Government obtained evidence tending to corroborate some of these prior robbery attempts and charged Defendants with the attempts that occurred between May 2010 and October 1, 2010.

In part as a result of Moss's cooperation, the grand jury returned charges against Defendants Terrance Brown, Toriano Johnson, Daryl Davis, Hasam Williams, Joseph K. Simmons, and Bobby Ricky Madison, relating to the October 1, 2010, armored-car robbery and some of the other alleged attempted armored-car robberies about which Moss told the Government during his debriefing sessions. Defendant Madison's trial proceeded separately from the other Defendants.[1]

During Madison's trial, the Government called Moss to testify. During his testimony, Moss implicated Defendants Brown, Johnson, Davis, Williams, and Madison by name, and Defendant Simmons by description. He provided exacting testimony explaining each Defendant's alleged role in the robbery and attempted robberies, as well as information regarding the details of the crimes.

---

[1]Defendant Madison allegedly was not involved in the October 1, 2010, robbery that resulting in the death of the Brink's messenger. As a result, he was not death-penalty eligible like the other Defendants in this case. A few months after the conclusion of Madison's trial, the Government announced that it would not seek the death penalty for the other Defendants in this case. Their trial is currently set to begin on May 20, 2013.

The Government then presented corroborating evidence, such as video recordings of vehicles during the alleged crimes, which matched Moss's descriptions; cellular telephone records indicating the locations of Defendants' cellular telephones in the areas where Moss described during the periods that Moss alleged; and other similar evidence.  In response, Madison attempted to impeach Moss's testimony, alleging that he had fabricated it.  On redirect, Moss testified as follows:

> Q:      . . . You were asked some questions about whether you had reviewed what's called discovery in this case with your lawyers.  Do you remember being asked that?
>
> A:      Yes, Sir.
>
> Q:      And just to make it clear, the government is under an obligation to provide to the defense all of the evidence that it's going to use against you?
>
> A:      Yes, Sir.
>
> Q:      And your lawyers told you that we did that?
>
> A:      Yes, Sir.
>
> Q:      Did you see in that discovery or did they ever talk to you and say, hey, we looked at discovery, what's this about a 2005 event?
>
> A:      No.
>
> Q:      In fact, when did we find out there was a 2005 event?
>
> A:      It's when the question was asked of me has there been any other robberies, and I volunteered that information honestly.
>
> Q:      After you pled guilty?
>
> A:      After I pled guilty.
>
> Q:      And when was it that the government found out that you had been involved in a July attempt?

A:      After I pled guilty and I told the truth about the situation currently to the same question, has there been any other robberies, particular robberies like that that we have did.

Q:      That wasn't in the discovery either?

A:      No.

Q:      And how about the attempt on 9/17, when did the government find out that there had been an attempt on 9/17?

A:      Way after my pleading guilty.

Q:      Was there anything that you reviewed that led you to believe that the government knew about the 2005 incident, the Lighthouse Point or the attempt in September?

A:      No, Sir.

Q:      Was any of that in the discovery?

A:      No, Sir.

Q:      You told us?

A:      Yes, Sir, I did.  I wanted to be truthful about the whole situation.  I mean, that is the best thing, being repentive for what I have done.

D.E. 392 at 228:12 - 230:1.  Based on this testimony, during closing, the Government argued that

Moss was credible because the Government was unaware of pretty much everything other than the

October 1, 2010, robbery until Moss told the Government about the prior attempts and successes.

In view of this testimony and argument, Defendant Brown now seeks the issuance of a Rule

17, Fed. R. Crim. P., subpoena to counsel for Moss, seeking the following:

1.      The investigative file related to work performed on behalf of Nathanial Moss (excluding information received from the government in discovery) as it relates to Mr. Moss's involvement with Mr. Brown in automobile thefts, robberies

-4-

and/or robbery attempts;

2.     All notes, memorandum and correspondence containing any facts which touch upon Mr. Moss's involvement with Mr. Brown in automobile thefts, robberies and/or robbery attempts (excluding information received from the government in discovery); and,

3.     All correspondence between the government attorneys and/or agents and the defense team, other than discovery responses which were filed in the court record and items identified within those discovery responses, which include information touching upon Mr. Moss's involvement with Mr. Brown in automobile thefts, robberies and/or robbery attempts.

D.E. 529 at 4.

The Government has filed its Response to Defendant's Motion for Issuance of Rule 17 Subpoena to Counsel for Nathanial Moss [D.E. 568], in which it noted that counsel for Defendant Brown had advised the Government that he was seeking from the Government those documents identified in the third request set forth above. D.E. 568 at 2. The Government further states that it "is not aware of the existence of any documents fitting [Brown's] request as set forth more particularly in category #3 of his motion. All documents, if any, that defendant Brown may believe fit his request would have been filed as a Response to the Standing Discovery Order in *U.S. v. Moss* . . . ." *Id.*

Counsel for Moss vehemently opposes Brown's Motion, invoking the attorney-client privilege and work-product protection. *See* D.E. 572. Moss's counsel further argues that Brown has failed to make any showing that he is entitled to the documents that he seeks.

## *II.  Discussion*

Rule 17(b), Fed. R. Crim. P., governs the issuance of subpoenas at an indigent defendant's

request:

> Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. . . .

Under this rule, a district court has broad discretion to weigh "numerous factors, including materiality, relevancy, and competency, in deciding whether to grant the request for a subpoena." *United States v. Moudy*, 462 F.2d 694, 697-98 (5th Cir. 1972) (citations omitted).

Rule 17(c)(1), in turn, sets forth the standard for subpoenas *duces tecum* in a criminal case. It provides,

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).  The Supreme Court has explained that a subpoena for documents under Rule 17 "was not intended to provide a means of discovery for criminal cases[;] . . . [rather,] its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials . . . ."  *United States v. Nixon*, 418 U.S. 683, 698 (1974) (citation omitted).

In evaluating whether a subpoena for documents should be issued under Rule 17, the Supreme Court has referred favorably to the test set forth in *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952), for determining whether a court should require production of documents before trial.  *See Nixon*, 418 U.S. at 699.  That test requires the moving party to show all of the following: "(1) that the documents are evidentiary . . . and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot

properly prepare for trial without such production and inspection in advance of trial and that the

failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application

is made in good faith and is not intended as a general 'fishing expedition.'" *Id.* at 699-700.

Based on this test, the Supreme Court has concluded, the moving party must satisfy three

requirements: (1) relevancy, (2) admissibility, and (3) specificity. *Id.* at 701; *see also United States

v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (noting that in *Nixon*, the Court "determined that, in

order to require production of information prior to trial, a party must make a reasonably specific

request for information that would be both relevant and admissible at trial"). Courts have noted that

the specificity and relevance elements are somewhat heightened in that they "require more than the

title of a document and conjecture as to its contents." *United States v. Arditti*, 955 F.2d 331, 345 (5th

Cir. 1992). For example,

> In *Nixon*, the Watergate special prosecutor was permitted to obtain
> audio tapes that the president was trying to retain, because he had
> shown that "there was sufficient likelihood that each of the tapes
> contain[ed] conversations relevant to the offenses charged in the
> indictment." He met this burden by offering sworn testimony of
> participants in the recorded conversations, or by giving reasons that
> permitted a rational inference of relevance, as well as by making a
> sufficient preliminary showing of admissibility.

*Id.* at 345-46 (quoting *Nixon*, 418 U.S. at 700).

Here, with respect to the relevancy requirement, Brown asserts that the documents sought

are relevant because they seek information for use in the cross-examination of Moss. *See* D.E. 529

at 6. In support of this position, Brown relies on *Silverman*, 745 F.2d 1386, which upheld a

subpoena, in part, on the basis that the subpoenaed documents "clearly possessed evidentiary

potential for impeachment purposes . . . ." *Id.* at 1397. *But see United States v. Hughes*, 895 F.2d

-7-

1135, 1146 (6th Cir. 1990) (relying on *Nixon*, 418 U.S. at 701, for the proposition that "'the need for evidence to impeach witnesses is insufficient to require its production in advance of trial'").

While the Court agrees that, in this Circuit, under *Silverman*, impeachment materials may be subpoenaed by a Rule 17(c) subpoena, the Court disagrees that the documents that Brown seeks satisfy the relevance and specificity requirements imposed by *Nixon* and its progeny. As the Eleventh Circuit has explained, "the rule only reaches *specifically identified documents* that will be admissible as evidence at trial, provided that the application for the subpoena is made in good faith. *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) (citations omitted) (emphasis added). This limitation arises from *Nixon* itself, where the Supreme Court overruled the President's challenge to a subpoena issued for certain tape recordings and documents relating to precisely identified meetings between the President and others. The subpoena was supported by sworn testimony or statements of one or more of the participants in the recorded conversations regarding what was said, thereby specifically demonstrating the content and relevance of the subpoenaed materials.

In this case, however, Brown asks for broad categories of documents without providing any indication of what he expects to find in them. In this regard, Brown seeks Moss's counsel's investigative file "as it relates to Mr. Moss's *involvement* with Mr. Brown in automobile thefts, robberies and/or robbery attempts;" documents "containing any facts which *touch upon Mr. Moss's involvement* with Mr. Brown in automobile thefts, robberies and/or robbery attempts . . . ;" and correspondence with the Government "which include[s] information *touching upon Mr. Moss's involvement* with Mr. Brown in automobile thefts, robberies and/or robbery attempts." D.E. 529 (emphasis added). These requests likely encompass everything in Moss's counsel's file that even

-8-

mentions Brown.  Unlike in *Nixon*, where the special prosecutor knew of and described both the existence and contents of the materials he sought, Brown has not set forth even generally the anticipated contents of these documents, assuming they exist, and he has identified no basis for believing that the subpoenaed documents would, in any way, impeach Moss's credibility with regard to how Moss knew what he told the Government — the stated purpose for obtaining the documents.

Instead, the subpoena request is really a discovery request prohibited under Rule 17(c) — a fishing expedition to determine whether documents even exist demonstrating that Moss learned through research sufficient facts regarding the robberies and attempted robberies that enabled him to falsely implicate Brown to the Government.  But Brown has made no showing — and the Court is currently aware of no evidence — that suggests that Moss conducted research or obtained information from the Government that somehow allowed Moss to fabricate Brown's involvement in the alleged crimes and have the pieces fit the Government's tangible evidence.[2]  The absence of such evidence is particularly conspicuous in view of the fact that the Government has stated in its response to Brown's pending Motion that it has made available to Brown all materials it provided to Moss.

Moreover, the Court is unaware of how Moss could have even obtained much of the tangible corroborating evidence that the Government presented during Madison's trial, even had he been aware of its existence.  For example, the Government presented cell-site records relating to Defendants' cellular telephone numbers, which showed Defendants' cellular telephone numbers

---

[2]The Court does not opine one way or the other on Moss's truthfulness.  Rather, the Court notes only that no evidence suggests that if Moss lied, he did so after investigation or review of evidence provided by the Government to him, and he crafted a story to fit with the Government's tangible evidence.

using cellular towers in the areas where Moss alleged that Defendants had participated in robberies and attempted robberies.  While the Government obtained the records at issue after seeking and obtaining a Court order requiring the service providers to give the Government the records, the Court cannot conceive of how Moss could have obtained such evidence in the absence of a court order, but Moss did not seek and this Court did not issue such an order at Moss's request.  So, not only has Brown not demonstrated that the records he seeks exist, it seems highly improbable that many, if not all, of them could.  Under these circumstances — and particularly where privileged information is at stake, the Court denies Brown's subpoena request.

### *III.  Conclusion*

For the foregoing reasons, Defendant Terrance Brown's Motion for Issuance of Rule 17 Subpoena to Counsel for Nathanial Moss [D.E. 529] is **DENIED**.

**DONE AND ORDERED** at Fort Lauderdale, Florida, this 15th day of April 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:

The Honorable Lurana S. Snow

Counsel of Record

-10-